**FEDERAL DISCTRICT COURT OF WASHINGTON
WESTERN DISTRICT AT SEATTLE**

| | |
|---|---|
| URBANO VELAZQUEZ, an individual, | No. 2:19-cv-745 |
| Plaintiff, | |
| vs. | |
| KING COUNTY, a political subdivision of the state of Washington, DEPUTY DEVON STRATTON, a King County Sheriff's Department Deputy, DEPUTY WEST, a King County Sheriff's Department Deputy, DEPUTY DONAGLIA, King County Sheriff's Department Deputy, and DOES 1 through 5, inclusive, | **RESPONSE TO KING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Noted for May 15, 2020** |
| Defendants. | |

## I. INTRODUCTION

Following a 911 call on May 20. 2016, Deputies Donaglia, West and Stratton along with police dog, Luky, responded to the Velazquez residence in Enumclaw at the request of Stacy Velazquez ("(Stacy"), spouse of Urbano Velazquez ("Urbano").  Stacy reported a minor assault alleging that Urbano pulled her hair.  Stacy told Deputies that Urbano was older, afraid and had

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

no weapons.  She asked Deputies not to hurt him and repeated these instructions three or four times.  Officers Donaglia and Stratton took Luky, a large German Shepard and searched in the area of the front of the Velazquez house, an adjacent barn, then made their way back to the rear of the house.  Ultimately, Deputies found Urbano in the crawl space which had no other access or egress portal.  It is here, the versions of events are contested:  Deputies maintain Urbano was not visible and was not responding to calls from Deputies, necessitating the introduction of Luky into the crawl space to locate and capture Urbano,  Urbano maintains that Deputies clearly saw him because they pointed their flashlights directly at his face.  He saw the flashlights and he loudly told officers he was coming out of the crawl space.  He made gestures of surrender and was moving toward the portal when Luky attacked, tearing deep wounds into Urbano's right arm.  These factual disputes are material and militate against granting summary judgment.

## II.  RELIEF REQUESTED

Plaintiff asks the Court to find the existence of genuine material facts that demonstrate that the moving parties are not entitled to Summary Judgment pursuant to Fed. R. Civ. P.56D.

## III.  DISPUTED FACTS

3.1     At 3:45 am on May 20, 2016, Urbano was found sleeping in the living room of the Velazquez home near the wood burning stove. The Velazquez daughters, Sabina (then 13) and Jasmine 12, were in their bedrooms on the second floor.  Amber, 8, was asleep on the couch in the living room.  Urbano did consume two and one-half beers during the evening of May 19, 2016 but was not intoxicated and not drunk.  Dec. U. Velazquez, ¶ 2.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 2 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

3.2     Stacy Velazquez returned home from visiting friends at 3:45 a.m.  She brought in some firewood (the source of heat for the house).  Urbano was awakened by Stacy, who entered the room with firewood.  Stacy tossed one of the logs at Urbano but the log glanced off a side table braking Urbano's glasses before Urbano deflected it away from him with his hand.  Although he was struck by the log, he claimed no injuries from the log.  Dec. U. Velazquez, ¶ 2.

3.3     Stacy pressed Urbano to go outside and get more firewood.  They argued.  As Stacy was putting a log in the fireplace, Urbano placed his hands on Stacy so that he could move her aside while he passed by on his way outside.  Stacy had a log in her hand and threatened Urbano.  He acknowledges touching or tugging on her hair as he passed by.  Stacy interpreted this act as intentional and called police as she had done on many other occasions.  Urbano heard the 911 call and exited the front door of the house in the direction of the barn but returned to the rear of the house and entered the portal to the crawl space.  Urbano positioned himself against a wall 10 to twelve feet from the portal, rested, drank.  Dec. U. Velazquez, ¶ 4.

3.4     Plaintiff does not dispute the statement of facts in Defendants' Third Paragraph of the FACTS section of the Motion for Summary Judgment.  Dec. U. Velazquez, ¶ 4.

3.5     In contrast to the Deputy Stratton's description of Stacy, Deputy Donaglia characterized physical demeanor of Stacy at 4:11 a.m. May 20, 2016 making no comment about "shaking" or being "scared."  Decl. S. Plowman, ¶ 3, Exhibit "A" Donaglia Incident Supplement Report.[1] Plaintiff does not dispute the remaining factual allegations in the fourth and fifth

---

[1] Deputy Stratton states:  "The victim RP/Stacey Velazquez came out to the front porch . . . She was physically shaking, she was crying and looked very afraid. Decl. S. Plowman, Exhibit _ , King Coutnty Sheriff Statement. Deputy Donaglia, in his contemporaneous Incident Supplement Report said:  "We contacted Stacey on the front porch. She advised us that she and Urbano had gotten into an argument.  Urbano pulled Stacey's hair, which she said cause her pain.  It was also advised that Urbano usually carries a knife."  Decl. S. Plowman, Exhibits _ and ___.

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

paragraphs of Defendants' Statement of Facts regarding Officers calling out warning with the following additional information.  From Urbano's position under the house, he testified that he could not hear the officers calling for him to surrender. Decl. S. Plowman, ¶ 4, Exhibit "B" Urbano Velazquez Dep. at 44:20. (All Deposition references derive from the Declaration of S. Plowman and subsequent citations will omit S. Plowman Declaration).   Just before Deputies captured Urbano from the rear of the Velazquez home, Jasmine heard Deputies say, "Come out with your hands up."  Dec. S. Plowman, , ¶ 5, Exhibit "C" Dep. J. Velazquez 23:13-15.  Jasmine was positioned in the front of the house in a second story bedroom with her bedroom window opened.  Id. at 18:1-22.  Sabina corroborates the fact that Deputies did call out to Urbano and she heard them from her position on her second floor bedroom at the front of the house.  Dec. S. Plowman, , ¶ 5 Exhibits "C" and "D," Dep. J. Velazquez 23:13-15.  Dec. S. Velazquez 59:12-24. Urbano does not contest the fact that Deputies could have been calling to him in the front of the house. Dep. U. Velezquez 51:1-9. Dec. U. Velazquez, , ¶ 7.

       3.6     The version of the events reported by Urbano at the point in time when Deputies arrived at the portal of the crawl space differs radically from the version of events reported by Deputies Statton and Donaglia.  Urbano gave a recorded statement to Deputy Toner at 5:55 a.m. May 20, 2016 at St. Elizabeth Hospital and recited the same story almost three years later in his deposition. Dep. U. Velazquez, 48, 49.  Compare to transcript of Sgt. Toner May 20, 2016 recorded interview for comparative purposes. Dec. U. Velazquez, ¶ 12.

       3.7     Urbano entered into the crawl space through a waist high door in the back of the Velazquez home.  Dep. U. Velazquez, 48:6 – 23.  He entered the small portal and left the doorway open 4 to 5 inches.  Decl. U. Velazquez, ¶ 4.  He brought his back pack and consumed three and one-half 16 oz. beers. Dep. U. Velazquez 66:5-19.  Urbano did not hear the Deputies

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 4 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

when they called for surrender while in the front of the house or in the rear of the house.  Dep. U. Velazquez 51:15, 16.  Urbano has a hearing impairment which affects his right side more than left side and he may have fallen asleep. Decl. U. Velazquez ¶ 5, 7.  Urbano estimated his time under the house between 15 and 30 minutes. Dep. U. Velazquez 67:23-25.  Urbano came to rest 10 to 12 feet from the portal and sat against the south foundation wall.  Decl. U. Velazquez ¶ 5.

       3.8     Urbano saw the portal open and immediately saw two flashlights approximately three feet from the entrance.  Dep. U. Velazquez 54:6-12.  Urbano saw Luky immediately in front of the Deputies. Id.  Urbano told officers that he was there.  "I told them first that I was there.  I already had the flashlight in my face.  I covered my face like this (gesturing with hands and arms raised in front defending against the bright flashlights.) I put my hands up, and I said, "I'm coming out."  I bent over. I started walking. I had a little bit to go when the dog got in my face. Dep. U. Velazquez 54:17-21.  Officers deny ever hearing anything from Urbano.  Decl. S. Plowman, ¶ 3. Exhibit "A."  The fact of Urbano's declarations is corroborated by his daughters Jasmine and Sabina.  Jasmine recalled hearing Urbano say "I'm coming out: I'm surrendering; like, don't release the dog."  Jasmine heard this from the second floor in front of the house while Urbano was in the Crawl space in the back of the house.  Dep. J. Velazquez. 33:35, 34:1.  23, 24. Jasmine heard her father's plea repeatedly.  Id. at 34:3-4.  Jasmine also heard Deputies call out "Come out with your hands up. We've got a dog: surrender."  Dep. J. Velazquez. 34:8-9. Jasmine reports a dialogue exchange between deputies and Urbano as if there were commands and intelligent responses by Urbano.[2]

---

[2] Dep. J. Velazquez 34:6-11
   Q (By Counsel, Dan Kinerk)    When you say "both of them were repeating," what were the other people saying?

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 5 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

3.9     Sabina also heard the Deputies in back of the house repeatedly order Urbano to come out and show his hands and Urbano's repeated response that he was coming out with his hands up and not to release the dog.  Dep. S. Velazquez, 59:23-25, 60:1-9.  Sabina was positioned in the opposite end of the house in the next bedroom to her sister Jasmine. Dep. S. Velazquez, 24:1-6.   She heard the exchange between her father and Sheriff's Deputies "clearly" and in "English."  Dep. S. Velazquez, 60:10, 14.

3.10    The attack by Luky occurred when Urbano had begun walking/crawling towards the portal and was positioned next to the iron drain pipes within 10 to 12 feet of the portal.  .  Decl. U. Velazquez. ¶ 9, 10.   Urbano's arms were in surrender position at his head level and slightly in front of his face to shade his eyes because of the intense flashlights when Luky struck and bit down on Urbano's arm.  Id.   The picture taken by Sheriff's deputies at the hospital clearly depict where the principal bite pattern on Urbano's upper forearm, the same arm raised forward in surrender position.  Id. at ¶ 10.

3.11    Deputy Stratton stated that Luky contacted Urbano while Urbano was facing away from the portal with hands and arms invisible to Deputies and Luky with legs moving about.  KCSO Report  Dec. S. Plowman, ¶ 6, Exhibit "F6."  Luky was positioned in between Statton and Urbano with tail wagging and his legs moving around.   This explanation does not explain the severe puncture and tear wounds sustained by Urbano's right forearm and area above the elbow.  Decl. U. Velazquez, ¶ 10.  Exhibits :C: and :D."

## IV.  ISSUES PRESENTED

---

 A   The police were saying, "Come out with your hands up; we've got the dog; surrender." And then I heard my dad saying, "I'm coming out, you know, don't release the dog."

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 6 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

Please refer to Headings under Section VI.  DISCUSSION below.


## V.  EVIDENCE RELIED UPON

1.  Declaration of Stephen Plowman and related Exhibits;

2.  Declaration of Urbano Velazquez and Exhibits.

3.  Declarations of Deputies Donalglia, West and Stratton referred to by Mr. Kinerk;

4.  Pleadings and Documents on file under Cause No. 2:19-cv-00745-RSM.


## VI.      DISCUSSION, POINTS AND AUTHORITIES

A.  <u>Plaintiff's Assault and Battery claims governed by RCW 4.16.100 are tolled by personal disability.</u>

Urbano initially made what he thought was a claim for his injuries to the King County Sheriff on or about the date of the dog bite incident.  Dec. U. Velazquez, ¶ 13.  Plaintiff was not contacted as part of the complaint process.  Urbano received a letter from Captain Mark Kanoske dated Ocober 26, 2016 acknowledging the complaint, disclosing the completion of the investigation and stating: "There is insufficient evidence to sustain the allegations you have made." Decl. U. Velazquez, ¶ 14.  See Exhibit "B."  Plaintiff, with a limited understanding of English, interpreted that as the conclusion of his legal claims and believed he had no other legal rights regarding the May 20, 2016 dog bite incident. Id.

In February of 2019, Urbano discussed the dog bite incident with Ray Lopez, his brother-in-law who suggested meeting with an attorney.  Plaintiff first met with Counsel on February 19, 2019. Dec. U. Velazquez. ¶ 14, 15.  Through Counsel, Urbano discovered that he may have state and federal claims which resulted in Plaintiff filing his Claim for Damages with King County,

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 7 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8ᵀᴴ STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

Washington on March 11, 2019. Decl. S. Plowman ¶ 8, Exhibit "F."  Plaintiff filed his Complaint for Violation of Civil Rights, Negligence, Assault and Battery, Strict Liability on May 17, 2019.  See Dkt. 1.  By all accounts, the incident which is the central focus of this Action occurred on May 20, 2016.  Plaintiff acknowledges the RCW 4.16.100 limits actions based upon assault and battery are limited to two years but points out that RCW 4.16.190 tolls the Statute of Limitations by reason of personal disability.  Plaintiff, did, in fact, assert what he believed to be his claim against the King County Sheriff's office sometime shortly after the May 20, 2016 incident resulting in an internal investigation and Administrative Review Team assessment. Plaintiff had no concept of the purpose and review jurisdiction of KCSO for its internal review of K9 Luky and his handler, Deputy Stratton, but thought he had made a claim for his injuries. Dec. U. Velazquez, ¶ 14, 15.  Receiving notification that the KCSO review had been completed and there was insufficient evidence to sustain allegations made by Urbano, Plaintiff thought he had no more legal right with respect to his claims. Id.  Not until February of 2019 did Urbano seek legal advice regarding the viability of his claims. Plaintiff argues that the two year statute under RCW 4.16.100 should be tolled by RCW 4.16.190 on grounds that the KCSO October 26, 2016 letter denied Urbano's complaint and his limited understanding of legal matters and limited English caused a disability to such a degree that Urbano could not understand the nature of the proceedings and his rights.  The statute should be tolled until February 19, 2019 when Urbano received clarification of his potential legal rights.

   B.  Velazquez claims of negligent supervision, training and oversight are viable through King County's vicarious liability and should not be dismissed because KCSO Deputies Stratton, Donaglia and West acted within the scope of their employment.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 8 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

Defendants seek dismissal of negligent supervision, training and oversight claims on grounds that Deputies West, Donaglia and Stratton were acting within the scope of their employment.  Defendant posit that actions within the scope of their employment are excluded from liability for negligent supervision under Washington law.[3]   Plaintiff does not dispute that KCSO Deputies were acting within the scope of their employment when answering the 911 call by Stacey Velazquez and searching for Urbano at the Velazquez residence.

However, negligent supervision, training and oversight can attach to King County by virtue of the acts performed within the scope of duties as executed by Defendants through vicarious liability.  See *Anderson v. Soap Lake Sch. Dist. et al*., 191 Wn.2d 343, 361, 433 P.3d 208 (2018). "If the employee is acting within the scope of his employment, then an employer is "vicariously liable under the principles of the law of Agency" instead." Id.  Within the context of a federal civil rights action under 1983, negligent supervision, training or oversight can serve as the basis for liability.  "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S.Ct. 1197, 103 L.Ed.2d 412, 57 U.S.L.W. 4270, (1989). Additionally, the lack of training must reflect a deliberate" or conscious choice by the King County in order to be actionable. Id.  Under *Monell*, the policy or program must address the tasks

---

[3] Defendants rely on *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479, 271 P.3d 254, 257 (2011) and *Anderson v. Soap Lake Sch. Dist. et al*., 191 Wn.2d 343, 361 (2018).  These cases cite correctly to the requirement that Plaintiff must show  "(1) an employee acted outside the scope of his or her employment;[6] (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees." Briggs v. Nova Servs., 135 Wn.App. 955, 966–67, 147 P.3d 616 (2006), aff'd, 166 Wn.2d 794, 213 P.3d 910 (2009).

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Page 9 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

1    of the employee in question.  *Monell v. New York City Dept. of Social Services*, 436 U. S. 658,

2    694 (1978).  The deficient training or supervision must be closely related to the "ultimate

3    injury." Id.

     Two KCSO reviewing officers identified the most obvious training, supervision and

     oversight problems with the arrest and method of apprehension of Urbano Velazquez.  Major

     Noel Fryberger, CDO (Command Duty Officer) identifies a number of training and supervisory

     issues that were brought to his attention by Sgt. Toner who had supervisorial and training duties

     for the Blue Team with respect to Officer Stratton, Luky's handler.[4]  Major Fryberger

     commenting on ART (Administrative Review Team)  REVIEW 2016-004, found that the K9

     should not have been deployed in the crawl space absent consent from owner and the injuries

     that the subject sustained were unreasonable given the circumstances. Decl. S. Plowman ¶ 10,

     Exhibit H,  Major Fryberger's  comment and review of  ART 2016-004. Sargent Mark Toner,

     Blue Team Leader, after an extensive review of facts, statements of officers and legal standards

     pertinent to the case, Concluded:

> "I do not believe that we had the right to enter the crawl space to locate and arrest the
> suspect, nor do I believe that we had the right to inflict the amount of injury that we did based on
> the relatively minor crime, the lack of exigent circumstances, and the lack of hot pursuit.   I am
> confident that Deputy Stratton was working and acting within his training and experience.  I feel
> that these issues should be addressed unit wide, rather than just with the one team."  Decl. S.
> Plowman ¶ 12, Exhibit J, Sgt. Toner Email to Capt. Steele.

     Plaintiff cites findings by KCSO reviewing officers to demonstrate that current policy

     and training are severely lacking with respect to the deployment of a K9 into a no exit crawl

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 10 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

space without owner permission.  The same reviewing officers condemn the use of such violent

force under circumstances when the alleged victim sustain minor injuries if any.  Urbano was not

armed and had been contained within the confines of the crawl space. That containment removed

any exigent circumstance and completely diffused the need for hot pursuit.  Id.  Remarkably, the

correspondence generated by Sgt. Toner expressly stated that he was looking for "case law and

standards."  It stands to reason that if supervising and teaching authority figures in the KCSO do

not readily find KCSO standards for the use of K9s in crawl spaces, foot soldiers like D. Stratton

are left to indiscriminately use severe force to apprehend light duty misdemeanants.  By contrast,

note the findings of Captain Jesse Anderson, ART REVIEW -ART 2016-004.[5]  Decl. S.

Plowman ¶ 13, Exhibit K. Lessons Learned.  The complete contrast of analysis and disunion of

sentiment between ART author, Jesse Anderson and Sgt. Toner's conclusions highlight the lack

of coherent training and supervision which led to the use of Luky to locate, viciously bite and

drag Urbano from the crawl space of his own home without warrant when the underlying offense

seemed trivial, at best.

    C.  Urbano's strict liability claim is preserved under RCW 16.08.040(2) and RCW

4.24.410.  The language of RCW 4.14.410(2) shields Deputy Stratton's action with regard to

Urbano with the cloak of immunity with the notable exception of use in the absence of "good

---

[4] Sargent Toner was the KCSO Deputy who interviewed Urbano at St. Elizabeth' Hospital immediately after the dog bite incident and made a contemporaneous recording of Urbano's statement.. Dec. SJP, Exhibit __, Transcription of Urbano Velazquez recorded statement.

[5] Decl. S. Plowman, ¶ 13, Exhibit "K".  K-9 DEPLOYMENT ART REVIEW- ART2016-004.  Captain Anderson concluded that Crawl Space dog insertion was perfectly appropriate because Deputies were in hot pursuit. Searching the crawl space is no different than searching the rooms of a house for a suspect of a domestic violence assault. The amount of force was justified because he would not come out after voice warnings.

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

faith." The following facts show lack of good faith in the apprehension of Urbano on May 20, 2016:

1)      Urbano clearly saw two flashlights, signaled his surrender and began crawling toward deputies before Luky attacked;

2)      Urbano stated, loud enough for his two daughters to hear at the opposite end of the Velazquez home, that he was in the crawl space, he was coming out and not to let the Dog loose;

3)      Even if the Declaration of D. Stratton were taken at face value, once Luky had identified Urbano, Luky should have been ordered to retreat prior to attacking, biting or attempting to drag Urbano out of the crawl space.  The alleged assailant had been found.

4.      The crawl space had only one portal.  Once discovered, Luky should have been restrained.

5.      This case involved an alleged misdemeanor incidence of domestic violence where Stacy reported a singular hair pull which had no visible means of corroboration except Stacy's statement to Deputies that "it hurt."  Urbano denies the incident as reported by Stacey and states categorically that any pulling of Stacy's hair was incidental to his attempt to get around her to leave the house.

6.      Urbano was not armed.  Stacey informed police that Urbano was old, scared and harmless and asked them not to hurt Urbano.

7      Deputies West, Stratton and Donaglia did not obtain permission from the owner to search the crawl space;

Defendants contend that "lawful application" within the meaning of RCW .16.08.040(2) as interpreted by *Finch v. Thurston County*, 186 Wn.2d 744, 751 (2016).  The facts of Urbano's apprehension and severe bite injuries can be distinguished from *Finch*.  The *Finch* Court dealt head on with the issue of strict liability in the context of a police K9 attack under the most unfortunate circumstances.  Bryent Finch, as a Tumwater Police Officer requested K9 assistance in order to find and apprehend a burglar hiding in the old Olympia Brewery.  The K9's handler, Officer Ditrich commanded  Rex (the K9) to search and Rex did so off leash.  When the two

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

officers entered a dark room where they thought the subject was hiding, Rex turned on Officer Finch and bit his private parts, causing severe injuries.  Id. The Finch court dismissed Finch's strict liability claims citing and supporting all of the elements of RCW 16.08.040(2).  Key elements of the Finch decision focused on Rex's clear mandate to search for a suspected burglar and was so doing at the time Ditrich's fellow officer, became the target of Rex, the K9.

Urbano's case can be distinguished.  Urbano was being hunted for an alleged misdemeanor with no visible injuries to Stacey.  Luky found him and Deputies Stratton and Donaglia probed the crawl space darkness with their flashlights.  Urbano has maintained consistently from his first statement on May 20, 2016 at 5:55 a.m. to Sgt. Toner, that he responded to Deputies when they opened the crawl space door verbally and by his actions, crawling towards the portal with hands raised.  Plaintiff contends that Defendants Stratton and Donaglia were not exercising 'lawful application' of Luky when they discovered Urbano was trapped in the crawl space, Urbano declared, while flashlight covered his face, that he was "here" and coming out telling Deputies not to let the dog in.  In other words, when Urbano was in the clear and definitive act of surrendering, Deputies could not authorize further search, bite and hold or orders for the dog to extract him from the crawl space.  This is precisely what Justice Madsen addressed in his dissent in Finch. Id at 253.  Whether the exception applies is a factual determination.[6]

---

[6] "Resolving such disputes is the proper role of a fact finder, see State v. Holbrook, 66 Wn.2d 278, 279, 401 P.2d 971 (1965) (the function and province of the jury is to weigh the evidence, determine credibility, and decide disputed questions of fact), and as discussed herein, the presence of such disputed facts renders the trial court's grant of summary judgment improper. Accordingly, I dissent."  (Chief Justice Madsen in his dissent, *Finch v. Thurston County*, 186 Wn.2d 744, 753, 381 P.3d 46, (2016).

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

1
2
3
4
5
6
7
8
9
10
11

KSCO Standard Operating Procedures approved by Chief Daniel Pingrey July 2015 ("SOP") Section 3.7.5 requires K9 handlers to be "current with the knowledge of the latest industry standards and/or legal ruling in the use of police dogs . . ."  Dec. S. Plowman, ¶ 14, Exhibit "L."  Sgt. Toner's evaluation of the May 20, 2016 K9 incident analyses *Graham v. Conner,* rulings, and even "contacted Terry Fleck, a nationally recognized expert on K9 legal issues."  Decl. S. Plowman, ¶ 12, Exhibit J.  Sgt. Toner concludes: "In my opinion, the tracking of the suspect by dog was appropriate.  The contact by the dog was not appropriate." Id.  Given the contradicting opinion within King County Sheriff's Office, it is clear that using a K9 with severe consequences to Urbano was not required after he was located and effectively trapped. Use of Luky was not in "good faith" as required by RCW 4.24.410.

12
13
14
15
16
17
18
19
20
21
22
23
24
25

Defense raises the point that Deputy Stratton was not the owner of Luky for purposes of RCW 16.08.040. Citing  *Conely v. Lakewood*  2012 WL 614886.  Plaintiff in that case failed to respond to the issue raised by the City of Lakewood. Nevertheless, the Conely court dismissed the strict liability claim as to Officer Syler but did not dismiss it against the City of Lakewood because Astor (K9 Patrol) was obviously owned by the City.   Defendants redacted the "client information" on Veterinary Chart notes in order to obscure the owner identity of Luky. Decl. S. Plowman, ¶ 15,  Exhibit M.  The holding in Conely simply points out that the City, not the individual K9 handler was the owner for purposes of RCW 16.08.040 strict liability.  King County is a named defendant.  Deputy Stratton is Luky's handler.  King County is the Owner.  Defendants acknowledge that Deputy Stratton was an employee of King County on May 20, 2016 and was acting within the scope of his employment. Plaintiff holds King County vicariously liable for the acts of its agents under principals of Respondeat Superior. The holding in *Conely* denying summary judgment is apposite: "Therefore, the City's liability under RCW §

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 14 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

16.08.040 hinges on whether Syler's actions were reasonable under the Fourth Amendment. Accordingly, the Court should deny summary judgment as to the strict liability claim under RCW § 16.08.040 against the City." *Conely* (at Section 8. Strict Liability under RCW §16.08.040.

### D.  KCSO Deputies Statton,West and Donaglia are not entitled to immunity for Velazquez Claims under Fourth Amendment.

The Fourth Amendment protects citizens from unreasonable searches and seizures and guaranties citizens the right to be secure in their persons. *Tennessee v. Garner*, 471 U.S. 1 (1985).  "The reasonableness of the force used to effect a particular seizure is determined by carefully balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Conely v. City of Lakewood,* 3:11-cv-6064 citing *Graham v. Connor,* 490 U.S. 386, 396 (1989).  Defendants appropriately cite 9th Circuit appellate opinions to measure the required objective reasonableness *Glenn v. Washington* County, 673 F.3d 864, 871 (9th Cir. 2011) but Plaintiff's analysis concludes differently:

> (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,"
>
> (2) "the government's interest in the use of force," and
>
> (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (2017) citing  *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011).

Taking the fact most favorable to Plaintiff, the type of force is the amount of force an 85 pound German Shepard could inflict by biting an unarmed 5' 6" man in a crawl space.  The

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 15 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

photographs of the bite wounds suffered by Urbano are grossly disturbing and document severe wounds, cutting and tearing through Urbano's upper and forearm ligaments, muscles and skin down to the bone. Decl. U. Velazquez, ¶ 10,  Exhibit D. The power and destructiveness of Luky's bite permanently disfigured Urbano's arm for life and disabled him through loss of function in his arm, general weakness, pain from overuse and lack of dexterity with his fingers. Dep. U. Velazquez 25-31.

The government's interest in use of force is articulated by Scott Somers, Use of Force Commander Review.  Decl. S. Plowman, ¶ 16, Exhibit "N."  Deputies needed to separate Stacy from Urbano and they needed to remove Urbano from the property in order to comply with KCSO guidelines and Washington State's mandatory arrest provision of the DVPA (b) and prevent the foreseeable risk that Urbano would return and harm Stacy. Id.  By the time Deputies Donaglia and Stratton arrived at 4:14 a.m., 18 minutes had elapsed and Urbano had already separated himself form Stacy by entering the crawlspace of the house. Deputies Stratton and Donaglia made their probable cause determination at 4:18 a.m and deployed Luky.  Decl. S. Plowman ¶ 10, Exhibit G.  At 4:41 am, Deputies found Urbano, 45 minutes after the 911 call. Urbano had not fled the scene nor was he "actively" moving away from anyone.  Urbano had unquestionably removed himself from the immediate vicinity of Stacy which stopped the conflict.  He was unarmed and sequestered in the crawl space with only one exit point.  In the light most favorable to Urbano, he left the main floor of the home having argued with Stacy in an attempt to remove himself from further conflict.  The only hair pulling was incidental to his sliding by Stacy as she was inserting wood into the fireplace.  Stacy was not hurt.  In his mind, he had not committed any crime and no probable cause was present to cause police to search and apprehend him.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 16 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

1    In the light most favorable to the Defendants, Urbano pulled Stacy's hair and she

2    appeared shaky and crying to Deputy Stratton.  Stratton determined probable cause on Stacy's

3    rendition events. This was a misdemeanor Domestic Violence case with no visible injuries.

4    Stacy told officers Urbano was older, weak, scared and unarmed and specifically requested that

5    Deputies not hurt Urbano.  Decl. S. Plowman, ¶ 17, Exibit "N" Dep. Stacy Velezquez, 29:15-19.

6        Regarding the balancing test between the gravity of the intrusion on Urbano and KCSO

7    need to separate Stacy and Urbano, it is nothing short of a factual determination to balance the

8    several considerations at play.  Urbano was already separated from Stacy and captured within the

9    crawl space.  The need for Luky to locate Urbano had ended.  Urbano maintains that he called

10   out to Deputies that he was 'here" [within the crawl space], he was coming out and not to let the

11   dog loose.  Defendants fault Urbano for not responding, but three people say that he did respond

12   indicting his surrender.  Deputies Donaglia and Stratton say they called out to Urbano to come

13   out and heard nothing.  Jasmine and Sabina heard the calls from Deputies Donaglia and Stratton

14   and heard the responses from Urbano.  Assuming, arguendo, that Deputies did call for surrender

15   and Urbano responded that he was coming out, but neither Deputies nor Urbano heard each

16   other, were the deputies authorized to use severe force in extracting Urbano in a crawl space

17   where there was no other exit?  Should deputies have waited 30 seconds for compliance or five

18   minutes or half an hour?  Why were circumstances so exigent that Deputies could not attempt a

19   less severe means of  urging Urbano from the crawl space? These are all concerns raised by the

20   Blue Team Supervisor, Sgt. Mark Toner, Decl. S. Plowman, ¶ 17, Exhibit "I" Use of Force

21   Supervisor Investigation Review.

22       Plaintiff also responds to strained and unfounded allegations that Urbano was resisting

23   arrest and that was the cause for the deep gash wounds in his upper arm and forearm.  Urbano

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

explains that Luky was trying to pull Urbano underneath the pipes.  Urbano could not fit under the pipes.  This was reported by Deputies as resisting arrest rather than Urbano's great shock at being wounded and trying to protect himself from vicious biting by Luky.  See Dec. U. Velazquez, ¶ 10.

Under facts construed in Urbano's favor, the Deputies should not be shielded by limited immunity as Plaintiff's Fourth Amendment right to be free of excessive force was violated.

Defendants ask for the dismissal of Deputy West for his lack of involvement in Luky's biting incident.  Plaintiff acknowledged that Deputy West arrived after the biting incident and should be dismissed from this action.

Defendants ask the Court to dismiss Deputy Donaglia for his lack of participation and inability to command Luky.  Deputy Donaglia must have reason to know that Deputy Stratton was subjecting the victim to objectively unreasonable force. *Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008). Secondly Deputy Stratton must have a realistic opportunity to intervene and prevent a constitutional violation from taking place. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). Even if the Court adopts KCSO version of events, DEPUTY Donaglia should not be dismissed.  Both Deputies saw Luky signal at the portal indicating that Urbano was very likely inside.  Even if Urbano said nothing, the presence of the officers at the crawl space portal meant that Urbano could not escape, Stacy Velezquez could not be contacted by Urbano. Any notion of 'hot pursuit' or 'exigent circumstances' evaporated the moment Deputies stood at the portal before Luky was allowed to enter the crawl space.  There existed a moment and opportunity for Deputy Donaglia to consult with Deputy Stratton before Luky was allowed to enter into the crawl space to do severe harm to Urbano.  Please refer to the Incident Reports submitted by Deputies Stratton and Donaglia, Decl. S. Plowman, Exhibits "A" and "E."

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 18 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

In the context of summary judgment, the Court is required to adopt facts most favorably to the non-moving party.[7]  In this case, we have Urbano's declaration that he saw two flashlights at the portal and the clear sight of Luky.  Urbano surrendered and advised deputies of his location and willingness to surrender before Luky entered.  He began to crawl to the portal with hands clearly in sight and clearly elevated to show his hands and arms and signal his surrender.  He states he was 10 to 12 feet from the portal with his hands in front and elevated to help block the bright flash lights when Luky entered and clamped down on Urbano's right arm.  If the surrender was made manifest to both Deputies prior to Luky's release into the crawl space, then Deputy Donaglia had the opportunity to consult and advise Deputy Stratton to refrain from allowing Luky to enter the crawl space.  Facts interpreted in the light most favorable to Plaintiff demonstrate an opportunity for meaningful intervention on the part of Deputy Donaglia.  *Cunningham v. Gates,* 229 F.3d 1271, 1289 (9th  Cir. 2000).

Plaintiff does not contend that Deputy Donaglai could have intervened with K9 Luky in any fashion or that Deputy Donaglia's mere presence during the tracking, finding and apprehending of Urbano constitutes the 'team effort' rejected in *Chuman v. Wright*, 76 F.3d 292 (9th Cir.1996).

E.   Velasquez's *Monell* claim is factually and legally sufficient to survive summary judgment.

As part of Plaintiff's First Cause of Action, Plaintiff alleges under Section 3.3

---

[7]  "The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

"3.3 With regard to King County and its Sheriff's Department, Plaintiff asserts a pattern and practice of the same or similar civil rights violations perpetrated by officers or deputies within King County Sheriff's Office and ratified by supervising officers. Complaint at 3.3.

The Supreme Court in Monell held: "In addition, local governments, like every other §1983 [42 U.S.C. § 1983] "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decision-making channels. *Monell v. Department of Social Services of the City of New York*, 98 S.Ct. 2018, 436 U.S. 658, 690-691(1978). Respondeat superior or vicarious liability will not attach under § 1983. Id. at 694-695.

Velasquez asserts that the KCSO engaged in a pattern and practice of civil rights violations through policies and procedures already described in Plaintiff's discussion under VI, (B). Defendants now argue that Plaintiff cannot establish KCSO procedures for using severe force on misdemeanants violate *City of Canton v. Harris* requirements. Further, Defendants contend that there is no evidence that the identified "deficiency (K9 force on subjects contained in a confined space) represents a conscious choice by the municipality to expose a plaintiff to likely injury. *Merritt v. County of Los Angeles*, 875 F.2d 765, 769-70 (9th Cir. 1989).

The very review process by which Deputy Stratton was exonerated from a misuse of force complaint will illustrate Plaintiff's ability to show the pattern or practice endorsed by King County that promotes with deliberate indifference Plaintiff's Fourth Amendment rights.[8]

---

[8] Const. United States Fourth Amendment reads: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Page 20 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

The formal review of the actions of Deputy Stratton on May 20, 2016 began with the complaint filed by Urbano Velazquez following the May 20, 2016 incident.  Dec. S. Plowman, ¶ 9, Exhibit "G.".  Sargent Mark Toner is identified as Investigating Supervisor. Id.  The assigned investigator, James Donner reviewed the following items in order to provide his findings and recommendations:

> 8 photos
> Suspect Recorded Statement
> 3 Deputy Statements
> Incident Report
> DV Victim Statement
> 911 audio tape to find out if Urbano was armed
> K9 Standard Operating Procedures

**Not cited in James Donner materials were the following:**

> Recorded Statement (Nor the transcript) of Sgt. Mark Toner interview of Urbano.
> Sgt. Mark Toner July 3, 2016 email correspondence to Capt. Abigail Steele
>> Which included analysis of Graham v. Connor, Law Enforcement Digest
>> April 2016 Issue, Terry Fleck articles
> Internal Investigations Follow-Up Report authored by Sergeant Steele May 23, 2016
> Any interviews of any person involved in the incident.
> KCSO Canine Use of Force Review
> CDO Noel Fryberger ART Review Sept 18, 2017

The report and recommendations of James Donner highlight the criteria identified in Canon that demonstrate Plaintiff ability to state a cause of action based on *Monell*.[9]  Donner's

---

[9] "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.[8] This rule is most consistent with our admonition in *Mone*ll, 436 U.S. at 694, and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.  *City of Canton, Ohio v. Harris,* 109 S.Ct. 1197, 1205-1205, 489 U.S. 378, 103 L.Ed.2d 412, 57 U.S.L.W. 4270, (1989).

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Page 21 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

Investigative Report starts with the KCSO K9 Standard Operating Procedures.  Donner explains

KCSO Departmental policy:

> 072716 1300 hrs:  I attached the K9 SOP to the case.  Duties of Canine Deputy
> Handlers 3.3.4  states, "The handler may deploy the dog on any crime, within the
> rules and regulations of RCW 10.31.100. Any use of force by the canine team
> during an apprehension of the suspect will be reviewed and determined whether
> the use of the canine team was "reasonable and necessary" under Washington State
> and Federal law. Handlers will never apply their dog against the orders of the
> supervisor in charge of a specific law enforcement operation."
> Dec. S. Plowman, ¶ 18, Exhibit "P."

Under this mandate, a King County K9 Handler may deploy a K9 "on any crime, within

the rules and regulations of RCW 10.31.100."  This blanket statement entirely ignores loud

cautions expressed by the Blue Team Investigating Supervisor Sgt. Toner, the admonitions of

Terry Fleck and importantly fresh case law made known to KCSO Investigators in the month

prior to the Urbano incident. Clearly, if KCSO Standard Operating Procedures as enforced by

KCSO Investigative authorities and internal investigation units ratify the kind of severe force for

relatively minor misdemeanor matters, constitutes a policy which is the moving force behind

Urbano's Fourth Amendment violations. Investigator Donner's findings and recommendations

show that King County Sheriff's Office policymaking officials adopted a persistent

and widespread practice of using unreasonably force that practically had the force of law.  It is

no surprise that Luky and Deputy Stratton were entirely exonerated without criticism or

admonition.  K9 Handler Devon Stratton's use of severe force against an unarmed Urbano

Velazquez, effectively imprisoned in a crawl space illustrates how KCSO policy directly affects

its Deputies.  K9 officers may use severe force under circumstances of any lawful arrest.  That

Policy does not reflect the current status of the law and has dangerous potential for abuse.

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
Page 22 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8ᵀᴴ STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

1

2

F.   Velazquez can establish the elements of his negligence claims against Deputies Stratton and Donalglia.

3

4

5

Plaintiff is not able to articulate the elements of a negligence action which would impose liability pursuant to the Negligence claim and agrees that Defendant, Deputy Christopher West may be dismissed from Plaintiff's claim for negligence.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Regarding the actions of Deputies Stratton and Donaglia have been thoroughly analyzed in Plaintiff's discussion in Section D. above.  In summary, Deputy Donaglia operated in lock step with Deputy Stratton.  He was present during questioning, he accompanied Officer Stratton in the search for Urbano.  He was present with Deputy Stratton when Luky identified the portal leading to the crawl space where Urbano was located.  Taking facts in the light most favorable to Urbano, Deputy Donaglia failed to communicate with Deputy Stratton regarding the advisability of sending Luky into the crawl space , whose actions would foreseeably cause severe injury. He failed to admonish Deputy Stratton to refrain from using severe force or use a less harmful means of coaxing Urbano to exit the crawl space.  He failed to implement his own reasonable means to extract Urbano, He failed to call a superior Blue Team Member to get counsel regarding use of K9 in a crawl space once Deputies had Urbano cornered in the crawl space well separated from Stacy.  When Urbano began to emerge from the crawl space, he failed to alert Deputy Stratton to call off  Luky's attack.  Given the standard of care owed to Urbano under *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) the 'duty' element of a negligence action seems clear:  "a police officer must act to prevent the use of excessive force when (1) the officer , observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Points raised by Defendants have been addressed.   Proximate cause and damages cannot be reasonably

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 23 of 25

1   disputed.  Plaintiff can maintain his negligence action against Deputy Donaglia and satisfy the

2   elements of a negligence claim under *Hoffer v. State*, 110 Wn.2d 415,421, 755 P.2d 781 (1988),

3   aff'd on rehearing, 113 Wash.2d 148, 776 P.2d 963 (1989).

4        G.  Plaintiff may maintain a negligence claim if he can demonstrate one of the four

5   exceptions to the public duty doctrine.

6        Plaintiff has demonstrated negligence on the part of Deputies Stratton and Donaglia in

7   Sections D and F, above.  When a public official, such as a police officer, acting in his or her

8   official capacity, "no liability will attach for a public official's negligent conduct unless the

9   plaintiff can show that the duty was owed to [him] rather than to the general public." *Donaldson*

10  *v. City of Seattle,* 65 Wn. App. 661, 666, 831 P.2d 1098 (1992) (citing Taylor v. Stevens Cnty.,

11  111 Wn.2d 159, 759 P.2d 447, 449-50 (1988)). See also Hernandez v. Kunkle, C12-178-RSM,

12  2013 U.S. Dist. LEXIS 6701 at *25 (W.D. Wash. Jan. 15, 2013) "Courts recognize four

13  exceptions to the public duty doctrine: (1) legislative intent, (2) failure to enforce when there is

14  actual knowledge of a statutory violation, (3) failure to exercise reasonable care when coming to

15  the aid of a particular plaintiff, and (4) where the injured plaintiff has a special relationship

16  entailing a separate duty from that owed the general public." *Lawson v. City of Seattle*, 2014 U.S.

17  Dist. LEXIS 55883, at 37-40 (W.D. Wash. Apr. 21, 2014).  Urbano has demonstrated that

18  Officers Stratton and Donaglia failed to refrain from using severe force once Urbano was caught

19  and cornered.  Even if the Court accepted "Deputy Stratton's intentional act of allowing Luky to

20  locate Urbano in the crawl space, neither Deputy acted to restrain Luky once Urbano was found,

21  therefore they were negligent in not further restraining Luky..  Luky had time to drag Urbano

22  under the drain pipe where he inflicted great harm to Urbano and Deputies failed to act to

23

24

25

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Page 24 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM

prevent these injuries.  Plaintiff should be allowed to proceed with his negligence claims under

the exceptions provided under the public duty doctrine.


## VII.  CONCLUSION

Plaintiff, having responded to Defendant's Motion for Summary Judgment, asks the

Court to Dismiss Deputy Christopher West from all claims.  Plaintiff further requests that all of

causes of action remain as to King County and Deputies Stratton and Donaglia.


DATED this 11th day of May 2020.

*s/Stephen J. Plowman*
Stephen J. Plowman, WSBA No. 21823
Representing Plaintiff, Urbano Velazquez
8048 NE 8th Street
Medina, WA  98039
Tel. (425) 233-0321
Email:  sjplowmanlaw@gmail.com


CERTIFICATE OF FILING AND SERVICE

Under penalty of perjury under the laws of the State of Washington and the United States of America, I hereby certify that on May 11, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF E-filing system, which will send notification of such filing to the following:

DANIEL L. KINERK, WSBA #13537
Senior Deputy Prosecuting Attorney
500 Fourth Ave., 9th Floor
Seattle, WA.  98104
E-Mail: dan.kinerk@kingcounty.gov
Attorneys for King County Defendants

By */s/ Stephen J. Plowman*


PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Page 25 of 25

STEPHEN J. PLOWMAN  WSBA No. 21823
8048 NE 8TH STREET
MEDINA, WASHINGTON 98039
TEL. (425) 233-0321
EMAIL. SJPLOWMANLAW@GMAIL.COM