UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| URBANO VELASQUEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY, a political subdivision of the state of Washington, *et al.*,<br><br>Defendants. | Case No. C19-745RSM<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. #16. Defendants King County and Deputies Devon Stratton, Christopher West, and Enrico Donaglia move for summary judgment dismissal of all of Plaintiff Urbano Velazquez's claims. For the reasons stated below, the Court GRANTS IN PART this Motion and dismisses certain claims as set forth below. Plaintiff's claims under §1983 against Defendants King County and Deputy Stratton remain and will proceed to trial.

## II.   BACKGROUND

On May 20, 2016, at approximately 3:55 a.m. in the morning, King County Sheriff's Office deputies Devon Stratton and Enrico Donaglia were sent to the Velazquez residence following a 911 call from Stacey Velazquez. Dkt. #19 ("Stratton Decl."), ¶¶ 6–8.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

Mrs. Velazquez reported to the 911 dispatcher that her husband had been drinking and had assaulted her, pulling her hair. Dkt. #17 at 25–26. She deliberately made the call using the speaker phone feature of her cellphone while her husband was in earshot so he would know the police were coming. *Id.* at 29. Deputies Donaglia and Stratton were told by dispatch that no weapon was involved in this incident. Stratton Decl. at ¶ 7.

Deputy Stratton, who is a certified generalist K-9 canine dog handler, was accompanied by his German Shepard police dog, Luky, and they arrived almost simultaneously with Deputy Donaglia. *Id*. at ¶¶ 6-7. Deputy Christopher West also heard the call but remained 3-4 blocks away from the residence after hearing that Mr. Velazquez had left prior to the deputies' arrival. Dkt. #20.

Deputies Donaglia and Stratton spoke with Stacey Velazquez on the front porch of the house. Stratton Decl. at ¶ 8. She explained why she had called 911. She pointed in the direction Plaintiff Velazquez had fled. Dkt #17 at 31.

Deputy Stratton retrieved Luky from his patrol car and attached a 33-foot tracking leash to Luky's harness. Stratton Decl. at ¶ 10. Deputy Stratton will testify he then made the first of many announcements that the area was going to be searched by a police dog and directing Mr. Velazquez to announce himself or the dog would find him and bite him. *Id*. at ¶ 10. He received no response and gave Luky a command to search. *Id*. The parties dispute whether or not Plaintiff Velazquez heard or could reasonably have heard this and future announcements. Potentially contributing to this was Mr. Velazquez's alcohol consumption. Mr. Velazquez admits he finished off "three and a half 16-ounce cans of Bud Light" after leaving his wife and going into the crawlspace below their house. Dkt. #17 ("Velazquez Dep.") at 67:15-19. From the Court's review of the facts as presented by Mr. Velazquez, this 56 ounces of beer was

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

consumed between 3:45 a.m. when his wife came home and when the police arrived at 4:11 a.m., or shortly thereafter—roughly half an hour. He states he did not hear the deputies calling for him, that he has a hearing impairment, and that he had fallen asleep at one point. Dkt. #22-1 ("Velazquez Decl."), ¶¶ 5, 7. The deputies searched around the backyard all while repeating verbal commands but receiving no response. *Id*.

Ultimately, Luky arrived at a small door to the crawlspace under the house. It appeared unlatched. Stratton Decl. at ¶ 12. Deputy Donaglia opened the door and shined his flashlight inside. It was dark, with low hanging pipes and insulation obstructing a clear view. Donaglia Decl. at ¶ 8. The only way to enter or exit the crawlspace was to go through this small door, so small that one would have to enter on hands and knees. Velazquez Dep. at 48:19-21. Determining it was unsafe for either of them to pursue Mr. Velazquez in that cramped area, Deputy Stratton directed Luky (on his leash) into the crawlspace. *Id*.

The parties agree that Luky found Mr. Velazquez and bit him on the arm, but what happened in the cramped darkness is hotly debated and no doubt clouded by the visual impairment of all the humans involved. Deputy Stratton declares that his commands and Luky's actions were consistent with Luky's training to "bite and hold" a non-compliant suspect. Stratton Decl. at ¶ 17. Mr. Velazquez declares that the bite occurred after he had woken up and called out to the deputies in English that he was in the crawlspace and coming out and after he made a move to do so. Velazquez Decl. at ¶¶ 8–9; Velazquez Dep. at 59:2-24. Deputy Stratton states that he received "no response" from Mr. Velazquez before the bite, and that Mr. Velazquez was concealing his hands and ignoring Deputy Stratton's commands. Stratton Decl. at ¶ 15. There is some dispute as whether or not Mr. Velazquez crawled out or was pulled out by Luky. *See id.;* Velazquez Decl. at ¶ 10. Mr. Velazquez was apparently

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

caught at one point on a pipe, potentially adding to his injuries. Velazquez Decl. at ¶ 10.  After exiting the crawlspace, Luky released Mr. Velazquez's arm and he was given medical attention.  Stratton Decl. at ¶ 15.  The injury to his arm was severe, apparently cutting down to the bone in more than one location, s*ee* Dkt. #22-1 at 28 (photograph of wound), and Mr. Velazquez alleges he has suffered some loss of function in that hand.

Mr. Velazquez stated in deposition that it was 20 to 25 seconds from the time he first saw the deputies' flashlights to the time he exited the crawlspace.  Velazquez Dep. at 63:4-10.  He stated that he walked in a hunched manner toward the exit about four or five feet after he called out to the deputies and before Luky made contact with his arm.  *Id*. at 59:22-24.

Mr. Velazquez later filed an administrative complaint with King County.  This lawsuit was filed nearly three years after the incident, on May 17, 2019.  Dkt. #1.  Plaintiff Velazquez alleges the following causes of action: use of excessive force brought under § 1983; negligence as to Deputies Stratton, West, and Donaglia; negligence as to King County for lack of supervision, training and oversight; assault and battery as to all Defendants; and strict liability as to all Defendants under RCW 16.08.040.  *Id*.  Plaintiff Velaquez alleges he has suffered physical, emotional and financial damages in an amount not less than $2,000,000.  *Id*.

### III. DISCUSSION

**A. Summary Judgment Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of

the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Assault and Battery Claims

Defendants argue that these claims are time-barred by the applicable two-year statute of limitations. Dkt. #16 at 6 (citing RCW 4.16.100). This would certainly seem to be the case.

Plaintiff Velazquez's position is that the limitations period "should be tolled by RCW 4.16.190… [because] his limited understanding of legal matters and limited English caused a disability to such a degree that [he] could not understand the nature of the proceedings and his rights," and that the period should be tolled until he met with his current counsel in 2019 and "received clarification of his potential legal rights." Dkt. #22 at 8. He states that he made what he believed to be his claim against the King County Sheriff's Office back in 2016 through an internal investigation and Administrative Review Team assessment. *Id.* When he received notification that the internal review had been completed and there was insufficient evidence to sustain the allegations, he apparently believed he had no legal avenue to pursue his claims until he spoke with his current counsel. *Id.*

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

RCW 4.16.190 tolls the limitation period if the plaintiff is "incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW…"[1] Mr. Velazquez has not provided any substantial evidence of incompetency or disability as defined under the statute. His argument instead reads to the Court as simple ignorance of the law. Given all of the above, the Court finds that Plaintiff's claims for assault and battery are properly dismissed as time-barred under the statute of limitations.

### C. Negligent Training, Supervision and Oversight Claim against King County

Defendants move for dismissal of these common law claims, arguing that such claims are "generally improper when an employer concedes the employee's actions occurred within the course and scope of employment." Dkt. #16 at 7 (citing *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479, 271 P.3d 254, 257 (2011)). Plaintiff acknowledges this law, Dkt. #22 at 9 n.3, never argues that the deputies in question acted outside the scope of their employment, and pivots his argument to claims brought under *Monell*, *infra*, addressed below. The Court finds that Plaintiff's common law negligent training, supervision, and oversight claims are properly dismissed on summary judgment.

### D. Strict Liability Claim under RCW 16.08.040

Plaintiff Velazquez brings a strict liability claim under RCW 16.08.040 against all Defendants. Dkt. #1. However, the plain language of Washington's "dog bite" statute limits liability to "The owner of any dog…" *See* RCW 16.08.040(1) and *Conely v. City of Lakewood*, 2012 WL 6148866, *14 (W.D. Wash., Dec. 11, 2012) ("Only the owner of a dog can be liable

---

[1] RCW 11.88.010 (1)(e) defines an incompetent person as "any person who is (i) incompetent by reason of mental illness, developmental disability, senility, habitual drunkenness, excessive use of drugs, or other mental incapacity, of either managing his or her property or caring for himself or herself, or both, or (ii) incapacitated as defined in (a), (b), or (d) of this subsection." "Disabled" is analogous to "incapacitated" under the statute, which is defined as an individual who "has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing or physical safety." *See* RCW 11.88.010 (1)(a).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

under RCW §16.08.040."). It is undisputed that King County was Luky's owner and not Deputies Stratton, Donaglia or West. *See* Stratton Decl. ¶ 5:14-16; Donaglia Decl. ¶ 2:17-18; West Decl. ¶ 8:1-3. The strict liability provisions of RCW 16.080.040 do not apply to these individual deputies. The Court further agrees with Defendants that there is no genuine dispute that the dog bite occurred during a "lawful application of a police dog," exempting King County from strict liability under RCW 16.08.040(2). *See* Dkt. #24 at 4 (citing *Finch v. Thurston*, 186 Wn.2d 744, 381 P.3d 46 (2016) ("Because Rex was being used by a law enforcement agency, was specially trained for law enforcement work, and was under the control of a dog handler when the bite occurred, Rex was lawfully applied for purposes of the strict liability exemption.")). The Court finds that the real dispute here is whether excessive force was deployed in an otherwise lawful application of a police dog. Given the above exemption, this claim is properly dismissed as to all Defendants.

E.  **§1983 Excessive Force Claims**

The Court will now turn to the more substantial §1983 claims brought by Mr. Velazquez and start by determining the proper Defendants for these claims.

Plaintiff Velazquez concedes that Defendant Christopher West "arrived after the biting incident and should be dismissed from this action." Dkt. #22 at 18. The Court will therefore move on to the excessive force claims brought against the other named Defendants.

The Court agrees with Defendants that this claim cannot proceed against Deputy Donaglia because he had no control over the force at issue nor any ability to reasonably intervene in the application of that force. Deputy Donaglia was not Luky's handler. Donaglia Decl. ¶ 5:17-18. Luky was not being held on a leash by Donaglia nor did he speak Czech, the language to which Luky received and responded to orders. Donaglia Decl. ¶ 13:1-3. The Court

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

concludes there is no evidence on the record that Donaglia could have seen or heard Plaintiff Velazquez under the crawlspace with sufficient time to intervene and prevent the bite via communication with Deputy Stratton who would then relay commands to Luky. *See* Donaglia Decl. ¶ 9:9-12; Velazquez Dep., 55:4-25; 56:1-2. A claim of § 1983 liability against Deputy Donaglia has to be based on his own conduct. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 2000). Accordingly, this claim is dismissed as against Deputy Donaglia.

Deputy Stratton, on the other hand, had a more immediate connection to the excessive force alleged. Defendants move to dismiss this claim against Deputy Stratton by citing to qualified immunity.

Officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). Clearly established means that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, __ U.S. __, 138 S.Ct. 577, 589 (2018). To be clearly established, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 138 S.Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Plaintiff Velazquez states in his declaration that the bite from Luky occurred after he had announced that he was in the crawlspace and that he was coming out. Dkt. #22-1 (Velazquez Decl.) at ¶ 9. He will testify that he was in the process of complying with the officers and heading out of the crawlspace when the bite occurred. Of course, the officers' ability to see what was happening the crawlspace at any given moment is debatable.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

The Court must view the evidence and draw all inferences in the light most favorable to Mr. Velazquez as the non-moving party. The Court cannot weigh on the credibility of witnesses at this stage. If a jury finds credible Mr. Velazquez's testimony that he shouted out in English that he was coming out moments before the bite, and finds that Defendant Stratton had enough time to call off Luky, then the failure to do so—in effect to permit Luky to bite a compliant suspect and continue to hold on as that suspect awkwardly exited a crawlspace causing a serious wound—could constitute a violation of clearly established law to a reasonable officer on the scene. Accordingly, summary judgment is not warranted for this claim as to Defendant Stratton.

F.  *Monell* Claims

Plaintiff Velazquez brings a § 1983 Fourth Amendment claim against Defendant King County as well as the individual Defendants above. To do so, he must show that any Fourth Amendment violation was caused by the County's policy, custom or usage. *See Monell v. New York Dep't of Social Services*, 436 U.S. 658, 691 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). To state a constitutional claim against a municipality, a plaintiff must: (1) identify the specific "policy" or "custom," (2) fairly attribute the policy or custom and fault for its creation to the municipality and (3) establish the necessary "affirmative link" between the identified policy or custom and the specific constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Additionally, liability only exists where the municipality acts with "deliberate indifference" to the rights of the plaintiff. *Id*. at 388, 109 S.Ct. 1197. Stated another way, the plaintiff must show that the identified deficiency represents a conscious choice by the municipality to expose a plaintiff to likely injury. *Merritt v. County of Los Angeles*, 875 F.2d 765, 769-70 (9th Cir. 1989).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

In the absence of any formal policy, a plaintiff must identify a "longstanding practice or custom which constitutes the standard operating procedure" that caused his alleged constitutional deprivation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well-settled . . . policy' of the municipality. *Id.*, quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2036. Municipality liability for improper practices or custom cannot be "predicated on isolated or sporadic incident; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (additional citations omitted).

"The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 379. "*Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the [defendant] is responsible." *Id*. "Rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, on whether such inadequate training can justifiably be said to represent [defendant's] policy." *Id*. "Moreover, the identified deficiency in the training program must be closely related to the ultimate injury." *Id*.

Plaintiff Velazquez points to a specific policy (cited in the King County Sheriff Office internal investigation): "Duties of Canine Deputy Handlers 3.3.4 states, 'The handler may deploy the dog on any crime, within the rules and regulations of RCW 10.31.100….'" Dkt. #23-2 at 40. Plaintiff calls this a "blanket statement" and links this policy to the constitutional violation of "K9 force on subjects contained in a confined space," further stating that "K9

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

Handler Devon Stratton's use of severe force against an unarmed Urbano Velazquez, effectively imprisoned in a crawl space illustrates how KCSO policy directly affects its Deputies." Dkt. #22 at 20–22.

The Court finds that this policy permits only the use of a K9 unit "on any crime" when the officers involved have probable cause to arrest without a warrant. If that is all that Deputies Donaglia and Stratton did there would be no injury to Plaintiff. The link between this policy and the constitutional violation is insufficiently articulated. The policy does not address the use of K9 units on suspects contained in a confined space. Plaintiff Velazquez does not point to a longstanding practice (in the absence of a formal policy) permitting the use of K9 units on suspects contained in a confined space. The Court is left with no way to know whether Deputy Stratton's actions were based on a policy or practice, or whether they demonstrate a single spontaneous decision.

If this injury was merely caused by a single decision, it may still have been a mistake that could have been avoided with better training. Inadequate training can serve as a basis for a *Monell* claim if facts specific to the training program are cited and they show deliberate indifference. Mr. Velazquez points to internal documents from King County Sheriff Officers reviewing the incident where training is specifically addressed:

> Major Noel Fryberger, CDO (Command Duty Officer) identifies a number of training and supervisory issues that were brought to his attention by Sgt. Toner who had supervisorial and training duties for the Blue Team with respect to Officer Stratton, Luky's handler. Major Fryberger commenting on ART (Administrative Review Team) REVIEW 2016-004, found that the K9 should not have been deployed in the crawl space absent consent from owner and the injuries that the subject sustained were unreasonable given the circumstances.

Dkt. #22 at 10 (citing Dkt #23-1 at 32–36).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

> Sergeant Mark Toner, Blue Team Leader, after an extensive review of facts, statements of officers and legal standards pertinent to the case, concluded: "I do not believe that we had the right to enter the crawl space to locate and arrest the suspect, nor do I believe that we had the right to inflict the amount of injury that we did based on the relatively minor crime, the lack of exigent circumstances, and the lack of hot pursuit. I am confident that Deputy Stratton was working and acting within his training and experience. I feel that these issues should be addressed unit wide, rather than just with the one team."

*Id.* (citing Dkt. #23-1 at 42).

Based on this evidence and the entire record, the Court can imagine a reasonable jury concluding there was a failure to adequately train King County Sheriff Office dog handlers on encounters with suspects in confined spaces, that this could amount to deliberate indifference to those suspects' constitutional rights, and that this failure is closely related to Mr. Velazquez's injury. Summary judgment dismissal of this claim is denied.

**G. Common Law Negligence Claim against Deputies West and Donaglia**

As noted above, given the undisputed facts, the Court has concluded that neither West nor Donaglia could have acted in time to prevent Luky from biting Plaintiff Velazquez even if a jury finds he announced himself and complied with the deputies' commands. Accordingly, the negligence claims against these deputies are properly dismissed for lack of causation.

**H. Negligence Claim against Stratton**

With regard to the negligence claim against Deputy Stratton, Defendants argue that Stratton acted intentionally and that a negligence claim cannot proceed in an excessive force case. Dkt. #16 at 22 – 23 (citing *Willard v. City of Everett*, 2013 U.S. Dist. LEXIS 126409, 2013 WL 4759064, *4-5 (W.D. Wash. Sept. 4, 2013); *Tegman v. Accident & Med. Investigations, Inc.*, 150 Wn.2d 102, 75 P.3d 497 (2003); *Brutsche v. City of Kent*, 164 Wn.2d 664, 679 193 P.3d 100 (2008); *Roufa v. Constantine*, 2017 U.S. Dist. LEXIS 4966, at 30-31

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

(W.D. Wash. Jan. 11, 2017); *Lawson v. City of Seattle*, 2014 U.S. Dist. LEXIS 55883, at 37-40 (W.D. Wash. Apr. 21, 2014)). Defendants' position is that "Deputy Stratton intended to allow Luky to investigate Velazquez's possible presence under the house crawl space and to allow Luky to bite Velazquez if he was non-compliant." *Id*. at 23.

Plaintiff Velazquez's attack against the intentionality of Deputy Stratton's actions is muddled. *See* Dkt. #22 at 24 ("Urbano has demonstrated that Officers Stratton and Donaglia failed to refrain from using severe force once Urbano was caught and cornered."). He argues that Deputy Stratton failed to act to restrain Luky once Plaintiff Velazquez was found; *i.e.* that he was "negligent in not further restraining Luky." *Id*.

There is no evidence that Deputy Stratton did not intend for Luky to continue to bite and hold Plaintiff Velazquez throughout the time in the crawlspace. Refusing to act can be intentional. Boiling down Plaintiff Velazquez's arguments, he is left arguing that Deputy Stratton's intentional actions were negligent. "A plaintiff may not base a claim of negligence on an intentional act, like the use of excessive force." *Willard, supra,* at *4. Accordingly, this claim is properly dismissed on summary judgment.

### IV.   CONCLUSION

Having considered the briefing from the parties, the attached exhibits, and the entire record, the Court hereby finds and ORDERS:

1) Defendants' Motion for Summary Judgment, Dkt. #16, is GRANTED IN PART. The following claims brought by Plaintiff are DISMISSED:
    a. Plaintiff's claims under §1983 for excessive force against Defendants West and Donaglia;

    b. Plaintiff's claims under §1983 under *Monell* for policy, custom, or usage against Defendant King County;

    c. Plaintiff's negligence claims against Deputies Stratton, West, and Donaglia;

    d. Plaintiff's negligence claim against Defendant King County;

    e. Plaintiff's assault and battery claims;

    f. Plaintiff's strict liability claims brought under RCW 16.08.040.

2) As stated above, what remains are Plaintiff's claims under §1983 against Defendant Stratton for excessive force and against King County under *Monell* for inadequate training. These claims are not dismissed and will proceed to trial.

DATED this 24th day of June, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14